IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JODY L. HIRST                               )
                                            )
                    Plaintiff,              )
                                            )
    -vs-                                    )           Civil Action 20-1756
                                            )
KILOLO KIJAKAZI,[1]                         )
                                            )
        Commissioner of Social Security     )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Jody L. Hirst  ("Hirst") brought this action for review of the final decision of the Commissioner of Social Security denying her claim for social security benefits. Hirst contends that she became disabled on March 14, 2018. (R. 59). She was represented by counsel at a hearing before an Administrative Law Judge ("ALJ") in January 2019. (R. 78-136). During the hearing both Hirst and a vocational expert ("VE") testified.  Ultimately, the ALJ denied benefits. (R. 56-77). Hirst has filed this appeal. The parties have filed Cross-Motions for Summary Judgment. *See* ECF Docket Nos. 16 and 18.

### Opinion

1. Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g) and 1383(c)(3)(7). Section 405(g) permits a district court

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021, replacing Andrew Saul.

to review the transcripts and records on which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart,* 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler,* 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker,* 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.*  The Commissioner's findings of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson,* 402 U.S. at 390, 91 S. Ct. 1420.

A district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses,

and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

2. <u>The ALJ's Decision</u>

At step one, the ALJ determined that Hirst had not engaged in substantial gainful activity since the alleged onset date. (R. 61). At step two, the ALJ found that Hirst suffered from the following severe impairments: degenerative disc disease; lumbar radiculopathy; discogenic syndrome; obesity; migraines; anxiety disorder; panic disorder; major depressive disorder; ADHD; alcohol abuse; IBS; gastritis; GERD. (R. 61-63). Turning to the third step, the ALJ concluded that those impairments, considered singly or in combination, did not meet or medically equal the severity of a listed impairment. (R. 63-65). The ALJ then found that Hirst had the residual functional capacity ("RFC") to perform light work with certain restrictions. (R. 65-70). Finding that Hirst was unable to perform past relevant work, the ALJ concluded that, considering her age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (R. 71-72). Specifically, the ALJ concluded that Hirst could perform the requirements of representative occupations such as: electrical accessories assembler; mail clerk; garment bagger. (R. 72). Consequently, the ALJ denied benefits.

3. <u>Discussion</u>

Hirst challenges the ALJ's decisions in several respects. First, she argues that the ALJ erred at the third step of the analysis. Specifically, she argues that she meets Listing 12.04 (depressive, bipolar and related disorders).  Listing 12.04 provides:

**12.04 Depressive, bipolar and related disorders (see 12.00B3), satisfied by A and B, or A and C:**

A. Medical documentation of the requirements of paragraph 1 or 2;

      1. Depressive disorder, characterized by five or more of the following:
           a. Depressed mood;
           b. Diminished interest in almost all activities;
           c. Appetite disturbance with change in weight;
           d. Sleep disturbance;
           e. Observable psychomotor agitation or retardation;
           f. Decreased energy;
           g. Feelings of guilt or worthlessness;
           h. Difficulty concentrating or thinking; or
           i. Thoughts of death or suicide.

      2. Bipolar disorder, characterized by three or more of the following:
           a. Pressured speech;
           b. Flight of ideas;
           c. Inflated self-esteem;
           d. Decreased need for sleep;
           e. Distractibility;
           f. Involvement in activities that have a high probability of painful consequences that are not recognized; or
           g. Increase in goal-directed activity or psychomotor agitation.
AND

B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
      1. Understand, remember, or apply information (see 12.00E1).
      2. Interact with others (see 12.00E2).
      3. Concentrate, persist, or maintain pace (see 12.00E3).
      4. Adapt or manage oneself (see 12.00E4).
OR

C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to the demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R., Pt. 404, Subpt. P, Appx. 1, Listing 12.04.

Here, Hirst argues that the evidence supports a finding that she meets the requirements of parts A, B and C. (ECF No. 17, p. 12-16). To be clear, the standard is not whether there is evidence to support a claimant's position. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989).

> [The] question is not whether substantial evidence supports Plaintiff's claims, or whether there is evidence that is inconsistent with the ALJ's finding… . Substantial evidence could support both Plaintiff's claims and the ALJ's findings because substantial evidence is less than a preponderance. *Jesurum v. Sec'y of Dep't. of Health & Human Services*, 48 F.3d 114, 117 (3d Cir. 1995) (*citing Richardson v. Pearles*, 402 U.S. 389, 401 (1971)). If substantial evidence supports the ALJ's finding, it does not matter if substantial evidence also supports Plaintiff's claims. *Reefer v. Barnhart*, 326 F.3d 376, 379 (3d Cir. 2003).

*Weidow v. Colvin*, Civ. No. 15-765, 2016 WL 5871164, at * 18 (M.D. Pa. Oct. 7, 2016). Thus, the question before me is whether substantial evidence supports the ALJ's findings. *Allen v. Bowen*, 881 F.2d 37, 39 (3d Cir. 1989).

I find that it does. Considering the B criteria, the ALJ concluded that Hirst had only moderate limitations with respect to understanding, remembering, and applying information. (R. 63). Substantial record evidence supports this conclusion. For instance, Hirst herself conceded that she did not need help paying bills, counting change, or handling a bank account. (R. 63, 307-309). Nor did she need reminders to care for her personal needs. (R. 63, 307-309). She is able to cook for herself and do her own

5

laundry. (R. 307). During the consultative examination, Hirst was able to perform serial 7s/3s and reason mathematically. (R. 63, 667). Further, Dr. Franks, the state agency psychologist, concluded that Hirst has a less than marked limitation. (R. 143). The ALJ also found Hirst had only moderate limitations with respect to the ability to interact with others. (R. 63-64). Again, substantial evidence supports that determination. Both the consultative examiner and the state agency psychologist concluded that Hirst had only a moderate limitation in this respect. (R. 143, 671). Additionally, Hirst reported that she spent time with her friends. (R. 64, 309, 786). With respect to concentration, persistence, or pace, again, the ALJ found Hirst had only moderate limitations. (R. 64). Both Dr. Pacella and Dr. Franks concluded that Hirst had only moderate limitations in this respect. (R. 670, 143). Further, as stated above, Hirst is able to pay bills, count change and maintain a bank account. (R. 64, 308). Additionally, during the consultative examination, Hirst demonstrated the ability to reason mathematically and do serial 7s and serial 3s. (R. 64, 667). Finally, as to the ability to adapt or manage oneself, the ALJ found Hirst suffered only a moderate limitation. (R. 64). As before, substantial evidence supports his conclusion. Hirst reported the ability to independently care for herself. She is able to shop in stores, prepare meals, perform household chores, and maintain her finances. (R. 64, 307-309, 668, 676). Additionally, Dr. Franks found Hirst had only a moderate limitation in this area. (R. 143-144).

As to the C criteria, the ALJ concluded that the record evidence did not demonstrate the existence of a mental disorder that is "serious and persistent." (R. 64-65). Specifically, the ALJ determined that the "evidence does not show medical treatment, mental health therapy, psychosocial supports, or a highly structured setting

6

that is ongoing and that diminishes the symptoms and signs of the  mental disorder and marginal adjustment, that is, a minimal capacity to adapt to changes in environment or to demands that are not already part of daily life." (R. 64-65). Again, Hirst bears the burden of proving that her condition meets the criteria of a listing.  The criterion set forth in C1 and C2 are further detailed as follows:

> b. The criterion in C1 is satisfied when the evidence shows that you rely, on an ongoing basis, upon medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s), to diminish the symptoms and signs of your mental disorder (see 12.00D). We consider that you receive ongoing medical treatment when the medical evidence establishes that you obtain medical treatment with a frequency consistent with accepted medical practice for the type of treatment or evaluation required for your medical condition. We will consider periods of inconsistent treatment or lack of compliance with treatment that may result from your mental disorder. If the evidence indicates that the inconsistent treatment or lack of compliance is a feature of your mental disorder, and it has led to an exacerbation of your symptoms and signs, we will not use it as evidence to support a finding that you have not received ongoing medical treatment as required by the paragraph.

> c. The criterion in C2 is satisfied when the evidence shows that, despite your diminished symptoms and signs, you have achieved only marginal adjustment. "Marginal adjustment" means that your adaptation to the requirements of daily life is fragile; that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life. We will consider that you have achieved only marginal adjustment when the evidence shows that changes or increased demands have led to exacerbation of your symptoms and signs and to deterioration in your functioning; for example, you have become unable to function outside of your home or a more restrictive setting, without substantial psychosocial supports (see 12.00D). Such deterioration may have necessitated a significant change in medication or other treatment. Similarly, because of the nature of your mental disorder, evidence may document episodes of deterioration that have required you to be hospitalized or absent from work, making it difficult for you to sustain work activity over time.

20 C.F.R. Part 404, Subpart P, App'x 1, 12.00(G)(2)(b)-(c).

7

Substantial evidence supports the ALJ's finding that Hirst has not satisfied the "marginal adjustment" criterion of paragraph C(2). [2] "The regulations include examples of psychosocial supports, such as the help of family members who aid a claimant in his or her basic functioning and daily activities, participation in programs that provide instruction in entry-level work skills and daily living, the receipt of 'comprehensive 24/7 wrap-around mental health services,' residence in a hospital or institution that provides 24-hour care, and receipt of 'assistance from a crisis response team, social workers, or community mental health workers' who help the claimant with his or her physical

---

[2] As to the C(1) criterion, I also find substantial evidentiary support for the ALJ's conclusion that Hirst did not engage in ongoing medical treatment, mental health therapy, psychosocial supports, or a highly structured setting that diminished the symptoms and signs of the mental disorder. Hirst saw Dr. Hahalyak, her primary care provider, a year before the alleged disability onset, and reported that she had ADHD and anxiety, for which she was not taking medication. (R. 382). Dr. Hahalyak prescribed medication. When Hirst returned a few months later, a drug screen showed that Hirst had non-prescribed narcotics in her system. (R. 386). Hirst reported that she was doing very well on her medication. (R. 384, 386). At a visit just before the alleged disability onset, she returned to her doctor and requested a different medication. (R. 394). When Hirst returned approximately four months later, she had cocaine and oxycodone in her system. (R. 400). Dr. Hahalyak switched medications because he would no longer prescribe controlled substances. (R. 402). Hirst then presented at Western PA Behavioral Health Resources as a new patient and was prescribed Klonopin. The following month, in September 2018, that medication was ceased because of a positive urinary drug screen. (R. 855). Again, Hirst switched providers and was re-started on Adderall and Prozac. (R. 735). In January 2019, Hirst was referred to an Excela Health Acute Mental Health / Dual Diagnosis for symptoms of anxiety and depression. (R. 769). Initially assessed with recurrent major depression – severe and polysubstance abuse, she was later assessed with bipolar and alcohol use disorder. (R. 763). She left that program in February of 2019 and reported significant improvement. (R. 784). At a "well woman exam," Hirst complained of anxiety and was given a few days of a Xanax prescription. (R. 714). Thereafter, in June of 2019, she presented to her psychiatrist and was prescribed Lamictal and Wellbutrin. She declined inpatient care for stabilization and did not meet the criteria for involuntary inpatient treatment. (R. 779). Hirst then started an intensive outpatient program for mood and anxiety in October 2019. (R. 983) and attended individual and group therapy through November 13, 2019. (R. 955-983). These records reflect that Hirst's first treatment with mental health professionals was in August of 2018. Her appointments were sporadic with the intervals between visits varying greatly as did the source and type of care. "At best, the evidence shows Plaintiff had frequent but irregular interactions with various medical and mental health care providers, involving a host of mood disorder issues and diagnoses, demonstrating occasional progress, and frequent noncompliance. The evidence does not, however, show Plaintiff engaged in the kind of continued and structured care Paragraph C(1) requires." *Douglas v. Saul*, Civ. No. 18-62, 2020 WL 1531353, at * 8 (S.D. Ga. Mar. 6, 2020), *citing, Houston v. Comm'r. of Soc. Sec.*, No. 1:18-c-449, 2019 WL 1529472, at * 5 (W.D. N.Y. Apr. 8, 2019) (finding a claimant did not meet the requirements of Paragraph C due to, among other things, relatively infrequent therapy sessions); *cf. Lowe v. Comm'r. of Soc. Sec.*, No. 2:18-cv-428, 2020 WL 439413, at * 4 (N.D. Ind. Jan. 9, 2020) (finding the consistent treatment shown by plaintiff – attending five to ten therapy and psychosocial support sessions per month – is the kind that could plausibly meet the Paragraph C).

needs." *Gibson v. Saul*, Civ. No. 20-145, 2021 WL 371577, at * 5 (D. Conn. Feb. 3, 2021) (*quoting*, 20 C.F.R. Pt. 404, Subpt. P, App. 1,12.00D.1.). "The regulations also recognize that a claimant can meet this standard if he lives alone and does not receive psychosocial supports but has instead 'created a highly structured environment by eliminating all but minimally necessary contact with the world outside [his] living space." *Gibson*, 2021 WL 371577, at * 5. In contrast, a claimant who functions mostly independently, travels independently, shops alone, goes online, manages money, and is observed to have goal-directed thoughts, typically cannot meet this standard. *Id.*, *citing, Campbell v. Comm'r. of Soc. Sec.*, Civ. No. 19-03215, 2020 WL 564120, at * 12 (S.D.N.Y. Sept. 22, 2020) (*citing cases*).  As the ALJ detailed in his opinion, Hirst's symptoms improved with medication; she was able to engage in many ordinary daily activities without signification limitations; she had only moderate limitations with respect to her ability to understand, remember or apply information; to interact with others; to concentrate, persist, or maintain pace; or to adapt or manage oneself. Additionally, Dr. Pacella opined that Hirst had only moderate limitations in functioning and Dr. Franks found that Hirst could perform a range of unskilled work. (R. 670, 149). Consequently, Hirst does not satisfy the requirements of either C(1) or C(2) and there is no basis for disturbing the ALJ's findings.

Hirst also challenges the ALJ's assessment of her physical impairments. Specifically, Hirst contends that the RFC does not account for her lumbar and sciatic pain and the accompanying limitations. Nor does the RFC account for her migraine headaches, despite the fact that the ALJ recognized her migraine headaches as presenting a severe impairment. Further, complains Hirst, the RFC fails to consider her

need to use the restroom as a result of her irritable bowel syndrome and gastritis. These arguments lack merit. First, to the extent that Hirst's arguments regarding her back pain are premised upon MRIs that were first presented to the Appeals Council, the ALJ cannot be faulted for failing to consider such evidence. *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001) (internal citation omitted). Further, Hirst has not argued that the evidence is new or material and should form the basis for remand. *Matthews*, 239 F.3d at 592. Moreover, the ALJ rejected Hirst's allegations that she could not sit or stand for more than 10 minutes. Instead, the ALJ  noted that the record indicated Hirst had 5/5 strength and normal gait and that she reported improvement with chiropractic care. (R. 66-68, 676-677, 928, 932, 954). As to her migraines, her argument is similarly unpersuasive. Hirst never saw a neurologist and she told her chiropractor that her headaches were rated a 3/10. (R. 67, 931, 954). Indeed, although Hirst was advised to see a neurologist, she reported improvement and canceled her appointment. (R. 67, 69, citing Ex. 16F/5). Additionally, the ALJ limited Hirst's exposure to extreme temperatures, hazards, and noise, and limited her to simple tasks and low stress work without strict time and /or production quotas. (R. 65). As to her contention that she may need more frequent access to a bathroom, this is conjecture. She does not identify to any opinion or physician note in support of this contention. As such, I am not persuaded that the ALJ erred, particularly where Hirst reported improvement of this condition and did not treat with a specialist. (R. 69, citing Ex. 16F/5).

Finally, Hirst takes issue with the ALJ's consideration of the VE's testimony. She contends that the ALJ "cherry-picked" portions of the VE's testimony rather than reading the testimony as a whole. (ECF No. 17, p. 19-20). Hirst's argument is unconvincing.

ALJs routinely pose a variety of hypotheticals to a vocational expert in order to assess the claimant's ability to engage in employment under various scenarios. *Seney v. Com'r. of Soc. Sec.*, 585 Fed. Appx. 805, 809 (3d Cir. 2014). "'While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments.'" *Seney*, 585 Fed. Appx. at 809, *quoting, Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Here, the ALJ relied upon the VE's answers to those hypotheticals which he found accurately portrayed Hirst's limitations. He was not compelled to include in his findings the VE's answers to hypotheticals which did not accurately reflect those limitations. As such, I find no error or basis for remand.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JODY L. HIRST | ) |
|       Plaintiff, | ) |
| | ) |
|  -vs- | )      Civil Action No. 20-1756 |
| | ) |
| KILO KIJAKAZI, | ) |
| | ) |
| Commissioner of Social Security, Defendant. | ) |

AMBROSE, Senior District Judge.


## **ORDER OF COURT**

Therefore, this 17th day of December, 2021, it is hereby ORDERED that the

Motion for Summary Judgment (Docket No. 16) is DENIED and the Motion for Summary

Judgment (Docket No. 18) is GRANTED. The Clerk of Courts shall mark this case

"Closed" forthwith.

BY THE COURT:

_Donetta F. Ambrose_

Donetta W. Ambrose
United States Senior District Judge

12